Lih Y. YOUNG, Plaintiff-Appellant,

v.

NATIONAL CENTER FOR HEALTH SERVICES RESEARCH, Defendant-Appellee.

No. 86–1081.

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1987.

Decided Sept. 9, 1987.

---

Jane L. Dolkart (Susan C. Silber, Langley Park, Md., on brief), for plaintiff-appellant.

Timothy M. White, Office of the General Counsel, U.S. Dept. of Health & Human Services, Washington, D.C. (Breckinridge L. Willcox, U.S. Atty., Glenda C. Gordon, Asst. U.S. Atty., Baltimore, Md., on brief), for defendant-appellee.

Before WINTER, Chief Judge, RUSSELL and WIDENER, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

Dr. Lih Young sued her former employer, the National Center for Health Services Research (NCHSR), under 42 U.S.C. § 2000e–16, alleging that it discriminated against her because she is of Chinese national origin. After an evidentiary hearing, the district court found that Dr. Young had failed to bring her grievance to an Equal Employment Opportunity (EEO) counselor within 30 days as required by 29 C.F.R. § 1613.214(a)(1)(i) (1986). The court therefore dismissed the suit for failure to exhaust administrative remedies. We think the record supports the conclusion that plaintiff brought her claim for constructive discharge to the EEO counsellor within the required 30 days, and accordingly we reverse.

## I.

From 1982 to March 19, 1984, Dr. Young was employed as an economist by NCHSR, which is a division of the United States Department of Health and Human Services. Dr. Young alleges that her employer discriminated against her throughout the period of her employment. She asserts, for example, that because of her national origin her supervisor treated her abusively, she was denied sick leave and annual leave, she was not given adequate access to training facilities, she was improperly suspended from duty effective March 11, 1984, and that she was ultimately forced to resign on March 19, 1984.

On April 17, 1984—twenty-nine days after she resigned—Dr. Young contacted an EEO counselor to complain that NCHSR's actions were discriminatory. The counselor's report on the meeting summarized Dr. Young's complaints about abusive treatment and arbitrary denial of leave, and it stated that "[c]ontinual harassment has lead to her feeling sick and feeling forced to resign which she did on March 19, 1984." On April 19, 1984, two days after the meeting with the counselor, Dr. Young filed a formal complaint with the EEOC; that complaint was not produced in the district court and is not in the record on appeal. However, in a letter that is part of the record, the Department of Health and Human Services rejected Dr. Young's complaint on the grounds that she had contacted the EEO counselor more than thirty days after the last alleged act of discrimination. The EEOC sustained the Department's decision.

Dr. Young then filed a *pro se* complaint in the district court, charging NCHSR with numerous distinct acts of discrimination and alleging that the discrimination continued through April, 1984, when she contacted the EEO counselor. In particular, the complaint asserted that Dr. Young had been forced to resign on March 19; it alleged that the agency director would not address her grievances about her suspension and sick leave unless she resigned, and that the director asked for her identification card and prepared a resignation form for her signature.

The suit was referred to a magistrate, who convened an evidentiary hearing to determine whether Dr. Young had brought her grievance to the EEO counselor within the required thirty days. After the hearing, the court ruled against Dr. Young and dismissed the suit. The court recognized that Dr. Young had contacted the counselor twenty-nine days after her resignation but concluded that the resignation was merely an "inevitable consequence" of the prior acts of alleged discrimination and "not itself a discriminatory act." Dr. Young, who is now represented by counsel, appeals from this holding.

## II.

It is settled law that a federal employee must seek administrative review of her grievance before filing a suit for unlawful discrimination in employment. *See* 42 U.S.C. § 2000e–16(b) & (c); 29 C.F.R. § 1613.211 *et seq.*; *Zografov v. V.A. Medical Center,* 779 F.2d 967, 968–69 (4th Cir. 1985). As a first step, the employee must speak to an EEO counselor about an alleged act of discrimination within 30 days of the alleged act. 29 C.F.R. § 1613.-214(a)(1)(i) (1986). If this counseling fails to resolve the grievance, the employee must then file a formal complaint with the employing agency within 15 days of the employee's last interview with the EEO counselor. 29 C.F.R. § 1613.214(a)(1)(ii) (1986).

It is also settled that the applicable administrative deadlines run from the time of the discriminatory act, not from the time of a later, inevitable consequence of that act. *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *United Airlines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Whether an employer's action is a "discriminatory act" or merely an "inevitable consequence" of prior discrimination depends on the particular facts of the case. *Ricks,* 449 U.S. at 258 n. 9, 101 S.Ct. at 504 n. 9. A resignation is not itself a "discriminatory act" if it is merely the consequence of past

discrimination, but if the employer discriminates against an employee and purposely makes the employee's job conditions so intolerable that a reasonable person would feel forced to resign, then the resignation is a constructive discharge—a distinct discriminatory "act" for which there is a distinct cause of action. *See Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985); *EEOC v. Federal Reserve Bank of Richmond*, 698 F.2d 633, 672 (4th Cir. 1983). If the employee has related discrimination claims that are barred by limitations or failure to exhaust, "these actions should be allowed as evidence on the question of whether [plaintiff] was constructively discharged." *Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th Cir. 1981).

■ In our view, the allegations of Dr. Young's complaint, as well as the facts brought out in the evidentiary hearing, make out a claim that she was constructively discharged on March 19 and that she complained about that constructive discharge to her EEO counselor 29 days later, on April 17. It is undisputed that Dr. Young contacted the EEO counselor on April 17 and, according to the counselor's report, complained that "[c]ontinual harassment has lead to her feeling sick and feeling forced to resign which she did on 3/19/84." We think "continual harassment," if it in fact occurred, could certainly make working conditions so "intolerable" that a reasonable person would feel forced to resign. *See Bristow*, 770 F.2d at 1255. Similarly, her claim of constructive discharge is supported by Dr. Young's allegations and testimony that the agency director would not act on her grievances unless she resigned. And it is possible to infer discriminatory purpose from Dr. Young's many other allegations of discrimination. *See Downey*, 649 F.2d at 305 (other discriminatory acts are relevant to

whether constructive discharge was discriminatory). Finally, we are mindful of the traditional rule that EEO *pro se* complaints are to be liberally construed, *President v. Vance*, 627 F.2d 353, 362 (D.C.Cir. 1980), and for this reason we do not think it fatal to her case that Dr. Young's administrative complaints did not use the precise words "constructive discharge."

We are unsure whether the district court's dismissal of the suit was a dismissal under Fed.R.Civ.P. 12(b)(6) or an entry of summary judgment under Fed.R.Civ.P. 56, but we need not decide this issue because in either event the judgment of the district court must be reversed. The complaint adequately alleges that Dr. Young brought her constructive discharge claim to the EEO counselor within 30 days, and the evidentiary hearing raises a genuine issue of material fact as to whether there was a constructive discharge.

■ NCHSR contends that even if Dr. Young complained of the resignation to the EEO counselor on April 17, she still did not meet all the regulatory requirements because she made no mention of the resignation in her formal complaint on April 19. We think that this contention is foreclosed. The defendant has the burden of proving the affirmative defense of failure to exhaust administrative remedies, *Brown v. Marsh*, 777 F.2d 8, 13 (D.C.Cir.1985), and yet NCHSR has not produced a copy of the very complaint it claims is defective—even though it admits that the complaint was filed with the Department of Health and Human Services and is presumably in the custody of the government. Under the circumstances, we decline to presume that the complaint was defective for failure to include mention of her resignation as a constructive discharge about which she had complained orally.*

---

* Unquestionably, Dr. Young gave the agency oral notice of a claim of constructive discharge. We neither decide the question nor express any view thereon, but we do note that, in an appropriate case, language in *Brown*, 777 F.2d at 13, and in *President*, 627 F.2d at 361, may provide a basis for the argument that the absence of an allegation of discriminatory treatment in the formal written complaint is not fatal to a claim for relief if notice of the alleged discriminatory treatment was given at an earlier stage of the grievance process or at some later time before the agency issued its final decision.

### III.

In sum, we hold that the district court erred by ruling that the allegedly forced resignation on March 19 could not be a "discriminatory act," so that we conclude that Dr. Young has alleged facts showing that she exhausted her administrative remedies. The case must be returned to the district court for determination on its merits.

REVERSED AND REMANDED.